UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BRIANA LYNCH, on behalf of herself and all others similarly situated, | ) ) ) | C/A: 2:15-cv-00580-PMD |
| Plaintiff, | ) ) | **MEMORANDUM TO SUPPORT PLAINTIFFS' MOTION FOR** |
| v. | ) ) | **CONDITIONAL CERTIFICATION AND** |
| DINING CONCEPTS GROUP, LLC d/b/a WICKED TUNA and JOHN DOES 1- 10, individually, | ) ) ) ) | **TO AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS** |
| Defendants. | ) ) | |

Plaintiff, Briana Lynch ("Lynch"), on behalf of herself and all others similarly situated, and all of the filed Opt-Ins to date[1] (all jointly "Plaintiffs"), by and through their undersigned counsel, submit this Memorandum to support their Motion for an Order of Conditional Certification, pursuant to section 16(b) of the Fair Labor Standards Act 29 U.S.C § 216.

### NATURE OF CASE

Plaintiffs filed this action on February 9, 2015, as a Collective Action, alleging Defendants violated provisions of the FLSA. The primary section that Plaintiffs allege Wicked Tuna violated is the "Tip Credit" of the FLSA, § 203(m), which is what Wicked Tuna was taking for *all employees to whom it was paying less than the statutory minimum wage*. On March 30, Defendants filed a Motion to Strike[2] certain elements of Plaintiffs alleged damages; however, neither that motion nor any other event prevents this motion from being ripe. Unfortunately,

---

[1] As of today, fifteen (15) individuals have filed Consents to Join this Lawsuit.
[2] Defendants also filed and labeled the motion as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted (Motion to Dismiss), but Defendants seek, in that motion, neither the dismissal of the Complaint nor any cause of action.

1

counsel for Defendants will not consent[3] to conditional certification or the mailing of notice to putative class members.

**FACTS**

Wicked Tuna is a restaurant in Murrells Inlet, South Carolina, which opened in May 2013. Defendants paid a number of employees, assigned to different positions, a direct, or hourly, rate less than the statutory minimum wage of seven and 25/100 dollars ($7.25) per hour by taking the Tip Credit under the FLSA. Defendants then created a "Tip Pool" by deducting from the wages of some of these employees amounts that were kept by Wicked Tuna for "breakage" and amounts that were redistributed to other employees, some of whom were back-of-the-house kitchen staff, who are clearly not employees who "customarily and regularly" receive tips. **Exh**. **1 – Wicked Tuna Memo** and **Exh**. **2 – Aff**. **of Jacob Hyde**.

**ARGUMENT**

**I**.     **Definition of Class**.

Under the FLSA, this action is at the stage of "*Conditional Class Certification,*" not final Certification. After discovery, Wicked Tuna will have the opportunity, if it wishes, to move for decertification, which could be the entire case or a portion of the Putative Class. At this current stage, under the FLSA, an action may be maintained by any one or more employees against an employer on behalf of themselves and others similarly situated. 29 U.S.C. §216(b).

The FLSA does not define "similarly situated" and the United States Court of

---

[3] Despite issuing written policies on Wicked Tuna letterhead that clearly violates the FLSA, the undersigned attorney believes Defendants are taking to the strategy of delaying everything that they can to delay putative class members from receiving notice of this Collective Action and exercising their legal right to "Opt-In." By delaying, Defendants are able to reduce their damages exposure because until the putative class member files a "Consent to Opt-In," every putative class member's statute of limitation continues to run. Because of this, Plaintiffs respectfully request that this motion be expedited with a ruling as soon as Defendants have filed their response.

> Appeals for the Fourth Circuit ("Fourth Circuit") has not yet applied a standard for when plaintiffs are similarly situated in the context of an FLSA class certification action. *Choimol*, 475 F. Supp. 2d at 562. However, federal courts, including this Court, have developed a two-step analysis for establishing "similarly situated" plaintiffs and granting conditional certification. *Id*. The first step is the notice stage, where "the district court decides whether to provide initial notice of the action to potential class members." *Id*. If the court decides to notify the class, potential plaintiffs may opt-in to the action. "**[T]his determination is made using a fairly lenient standard,**" because the court, and the parties, have minimal evidence at this point in the proceedings. *Id*. (citations omitted). In general, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Sperling v. Hoffman-LaRoche, Inc*., 118 F.R.D. 392 (D.N.J. 1988), *aff'd in part*, 862 F.2d 439, 444 (3d Cir. 1988), *aff'd*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)."

*Gregory v. Belfor USA Group, Inc*., 2012 U.S. Dist. LEXIS 104573 (E.D. Va. July 26, 2012) (emphasis added). **Exh**. **3**.

A prevailing treatise[4] on FLSA Collective Action litigation weighs in on this issue. "Courts in the Fourth Circuit and elsewhere have held that [employees are similarly situated] when plaintiffs raise a similar legal issue as to coverage, exemption or nonpayment of minimum wages or overtime arising from a factual setting that is "manageably similar" as to job requirements and pay provisions." *McLaurin v. Prestage Foods, Inc.,* 2010 WL 4693662, at *1 (E.D.N.C. 2010); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.* 338 F. Supp.2d 649, 654 (E.D.N.C. 2004). Noah H. Finkel, et. al., *Wage & Hour Collective and Class Litigation,* § 4.01[1], (5th ed. 2015) (citations added) (emphasis added). **Exh**. **4**. At least one court within the borders of our Fourth Circuit has described the test for similarly situated employees as more of a legal inquiry than a factual one. *Houston v. URS Corp*., 591 F. Supp.2d 827, 831 (E.D. Va. 2008).

---

[4] This treatise is authored and edited entirely by the Labor & Employment team of Seyfarth Shaw, which boasts having one of the top ten employment practices representing management exclusively. Although the treatise outlines the law for both employees and employers, it gives opinions and tips to help attorneys representing employers.

The treatise expounds further on this topic as it relates to violation of the Tip Credit.

> **With regard to tipped employees specifically,** "[t]he name and nature of a position is of less relevance in cases in which the alleged FLSA violation is, for example, improper pooling of tips or other prohibited pay practices. The issue of job duties is sometimes not even addressed at all in such cases because it simply does not relate to the alleged FLSA violation.

Finkel, et. al., *Wage & Hour Collective and Class Litigation,* at § 4.05 (emphasis added) **Exh**. **4**.

Plaintiffs respectfully request that the Court:

1. Conditionally certify this matter as a collective action for actual damages, liquidated damages, and attorneys' fees and costs under 29 U.S.C. §216(b); and

2. Define the class as follows: "All Wicked Tuna employees[5] who at any time were paid an hourly rate less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool."

Plaintiffs need only be employees of the same restaurant enterprise and be alleging the same type of FLSA violation. *Fasanelli v. Heartland Brewery, Inc*., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007). Within the Fourth Circuit, it has been held that servers claiming an FLSA violation because they were not paid a sufficient minimum wage and "back-of-house" staff who alleged that they were misclassified as exempt were similarly situated enough such that they belonged in the same class for the purposes of conditional certification. *Ruiz v. Monterey of Lusby, Inc*., 2014 U.S. Dist. LEXIS 61791 (D. Md. May 5, 2014) **Exh**. **5**. In other restaurant cases of this nature, it has been found that back waiters, servers, and bartenders can be in the same class for the purposes of conditional certification, as can food runners, bussers, and other tip eligible employees. *Schear v. Food Scope Am., Inc*., 297 F.R.D. 114 (S.D.N.Y. 2014);

---

[5] Neither a date nor a time period are needed because Wicked Tuna did not open until May 2013, therefore, all individuals will be within the maximum, three (3) year statute of limitations period.

4

*Capsolas v. Pasta Res., Inc.,* 2011 U.S. Dist. LEXIS 49926 (S.D.N.Y. May 9, 2011) **Exh. 6**.

In this action, the putative class members are Wicked Tuna employees who were paid less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool. The policy that Plaintiffs know Wicked Tuna violated is the "Tip Credit" of the FLSA, which is what Wicked Tuna was taking for *all employees to whom it was paying less than the statutory minimum wage*. Wicked Tuna was allowing the tips, or the sharing of a tip pool, to make up the difference between the direct, or hourly, wage received by the employee and at least the required minimum wage. Once Wicked Tuna *poisoned this Tip Pool, all employees who drank from it were poisoned* and became members of the putative class.

For servers, Wicked Tuna deducted the following amounts from their wages:

- one percent (1%) of their sales for each shift to share with the bartenders;
- one and one half percent (1.5%) of their sales for each shift to share with the back waiters;
- two and one half percent (2.5%) of their sales for each shift to share with back of the house employees;
- One and 00/100 dollars ($1.00) per shift for "breakage."

For bartenders, Wicked Tuna deducted the following amounts from their wages:

- two and one half percent (2.5%) of their sales for each shift to share with back of the house employees;
- two and one half percent (2.5%) of their sales for each shift to share with the bar back;
- One and 00/100 dollars ($1.00) per shift for "breakage."

5

**Exh**. **1**.

Wicked Tuna also paid some of the support staff an hourly rate less than the statutory minimum wage because these employees also received portions from the illegal tip pool. **Exh**. **2**.

## II.     Notice to Potential Class Members.

The purpose of notice in a collective action is to give potential members accurate and timely information in order **to make an informed decision about whether to participate** in the pending action. *Hoffmann-La Roche, Inc*. *v*. *Sperling*, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (emphasis added).  The content of the notice is subject to the broad discretion of the trial court, wherein the overarching policies of the collective suit, the broad remedial purpose of the FLSA, and the above stated purposes of the notice itself are the main objectives the trial court intends to effectuate. *Id; Dybach v*. *Florida Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Gjurovich v*. *Emmanuel's Marketplace, Inc*., 282 F. Supp.2d 101, 105-06 (S.D.N.Y. 2003).

Trial courts have suggested numerous, different strategies to effectuate best the proper notice depending on the specific circumstances of the class at hand, including, but not limited to: posting notice in the place of business; emailing notice; creating a website coupled with a press release directing people to find notice on the site; and making phone calls to potential class members with a court-approved script. *Amrhein v*. *Regency Mgmt*. *Servs*., *LLC*, 2014 U.S. Dist. LEXIS 36477 (D. Md. Mar. 20, 2014) (holding that email is an appropriate means of disseminating notice, as it is not as interactive as a telephone call) **Exh**. **7**; *Arevalo v*. *D.J.'s Underground, Inc*., 2010 U.S. Dist. LEXIS 109193 (D. Md. Oct. 13, 2010) (stating that many courts allow notice via telephone as a matter of course) **Exh**. **8**; *Guy v*. *Casal Inst*. *of Nev*., *LLC*, 2014 U.S. Dist. LEXIS 65056 (D. Nev. May 12, 2014) (stating that email is an efficient,

reasonable, and low cost supplemental form of notice, particularly where the Defendants may lack current physical mailing address information for its former employees) **Exh**. **9**; *Espenscheid v*. *DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578 (W.D. Wis. June 4, 2010) (allowing for a website to be created with a press release directing people to it and for phone calls to be made with a court approved script) **Exh**. **10**.

With the above-stated purpose, or goal, of the notice, and the numerous approved methods of delivering the notice, it is this court's duty to approve the notice that will best accomplish the goal *for these putative members*.

### A.    Plaintiffs' Requested Notice

Plaintiffs request that the Court enter an order:

1. Requiring Defendants to provide counsel for Plaintiffs,[6] in electronic (Excel spreadsheet) format, the following information for each Wicked Tuna employee who was paid an hourly rate less than Seven and 25/100 dollars ($7.25) per hour:

   a. Full names and identifying if the individual is a current employee;
   b. Dates of employment;
   c. All known mailing addresses;
   d. All known email addresses; and
   e. All known telephone numbers.

2. Authorizing the mailing of Notice and Consent, **Exh**. **11**, through U.S. Mail to all known addresses;

3. Authorizing the emailing of the "Email" Notice and Consent, **Exh**. **12**, with **Exh**. **11** attached to the email, to all putative class members who have email addresses;

---

[6] Plaintiffs are amenable to allowing Defendants to use a Third Party Administrator ("TPA") to disseminate the notice, as long as all costs associated with the TPA are paid by Defendants. Plaintiffs also request that the same information provided to the TPA be remitted to attorneys for Plaintiffs.

7

      4.      Posting of laminated Notice, **Exh**. **11**, with an adjacent envelope or folder, containing the consents, in a communal area within Wicked Tuna; and

      5.      Sending a text message of the Reduced Notice, **Exh**. **13**, via cell phone to any putative class member whose Notice and Consent sent through U.S. Mail comes back as undeliverable.[7]

**B**.    **U**.**S**. **Mail**

Delivering Notice and Consent via U.S. Mail is the standard, though somewhat antiquated, method of dissemination. Plaintiffs contend that in utilizing this method of dissemination, Notice and Consent should be sent to all addresses Wicked Tuna has on file. This putative class is migratory in nature, primarily composed of younger people, a miniscule number of whom own their own homes. In the types of housing that the vast majority of these employees avail themselves, the ever-revolving list of tenants does not lend itself to mail being returned to the post office to be forwarded to a former tenant at their "latest known mailing address." If a former employee initially requested a forwarding order with the U.S. Postal Service, this order expires after (6) months, unless the individual files a request for an additional six (6) months. **Exh**. **14**.[8]

Additionally, the seasonal nature of Wicked Tuna, located in Murrells Inlet, just south of the Myrtle Beach area, lends itself to employees who routinely relocate. If Wicked Tuna is in possession of more than one (1) address for an employee, it is possible that one of those addresses is a temporary address where the individual may have resided while working, but the

---

[7] Plaintiffs contend that there is a high probability that U.S. mail will never be returned as undeliverable, but also never was received by the Putative Class member. In an almost identical action, Alshehabi v Hymans Seafood, 2:14-cv-02724-PMD, this Court stated that if, after the forty-five (45) day notice period has expired, Plaintiffs can prove these events have occurred, this Court would consider what corrective action, if any, would be needed.

[8] USPS Mail Forwarding Policy (https://www.usps.com/manage/forward-mail.htm).

8

other is more of a permanent address that will effectuate proper delivery of notice.

  **C**.  **Email**

Wicked Tuna uses an online scheduling system called Schedulefly, therefore, all employees must have an email address to obtain their work schedules. Thus, either Wicked Tuna or Schedulefly have, at the very least, email addresses for all current employees, if not all former employees. **Exh**. **15 – Aff**. **of Elisabeth Germain**. Furthermore, this type of employer routinely solicits applications via Craigslist or other similar sites, wherein applicants would respond via email.[9]

The Fourth Circuit has recently allowed Notice to be disseminated via email. *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 U.S. Dist. LEXIS 36477 (D. Md. March 20, 2014). **Exh**.**7**. In *Amrhein,* the court determined that email was an allowable method of notice, as opposed to telephone communication. The reasoning pivoted on the idea that email communication was not interactive, as a telephone call would be, and would be easier for the Court to regulate its contents. *Id*.

Because almost all email servers have some type of SPAM (Junk Mail) filter, it will be of utmost importance to have the correct "subject line" for the email that is sent. Plaintiffs suggest: "Wicked Tuna Lawsuit – Please Read" The text of the email will have what is contained on Email Notice, **Exh**. **12**, with the full notice, **Exh**. **11**, attached to the email. The email Notice, **Exh**. **12**, is important because this restaurant is located just south of the Grand Strand area and has many seasonal employees. Although mailing addresses may change with seasons, email addresses tend to last for a long time. This method of distributing notice has been found by courts to be a safe, reliable, and very unobtrusive method of delivering notice.

---

[9] Although hand written applications do not always provide an entry for one's email address, if Wicked Tuna is in possession of an employee's resume, it likely has an email address affixed.

9

### D.    Text Message via Cell Phone

If a putative member's Notice and Consent, after being sent via U.S. Mail, is returned as undeliverable, a text message with Reduced Notice should be sent to all known phone numbers for that individual. **Exh**. **13**.  The one constant contact that *these putative members* have is their cell phone number.  This number can be used to send them an electronic text message – no different than an email – giving them the proper notice that they deserve so they can make an informed decision, which is the intended goal of the notice.

The same legal reasoning of using *email* would apply to sending a *text message via cell phone*.  By limiting use of the cell phone numbers to a single text message, the idea of phone communication being interactive is diminished to being the same amount of interaction as an email and as simple to control the content.

The Fourth Circuit recognizes that in some collective action cases, in order to effectuate proper notice, there may arise a special need for disclosure of the telephone numbers of prospective members. *Arevalo v. D.J.'s Underground, Inc*., 2010 U.S. Dist. LEXIS 109193 (D. Md. October 13, 2010). **Exh**. **8**.  The special need is present here due to the migratory nature of the putative class members. *Schemkes v. Presidential Limousine,* 2011 U.S. Dist. LEXIS 34050, 12-13 (D. Nev. Mar. 10, 2011). **Exh**. **16**.[10]  *For these putative class members,* Cell phone numbers, as opposed to mailing addresses, are far more likely to have remained constant.

### E.    Communal Bulletin Board

Additionally, Plaintiffs believe that Notice should be posted in a communal area within

---

[10]  A similar migratory class was addressed in the Ninth Circuit in *Schemkes v. Presidential Limousine,* 2011 U.S. Dist. LEXIS 34050, 12-13 (D. Nev. Mar. 10, 2011).  Although Plaintiffs did not request to disseminate notice in any method other than US Mail, the Court decided, *sua sponte,* that due to the fact that most people living in Las Vegas do not stay at the same address for multiple years, email would be a more useful method to provide a more efficient and cost effective notice.

Wicked Tuna.  Courts routinely approve the posting of notice on employee bulletin boards and in common employee spaces. *Mendoza v. Ashiya Sushi 5, Inc*., 2013 U.S. Dist. LEXIS 132777 (S.D.N.Y. Sept. 16, 2013).  **Exh**. **17**.  This court has recently approved of posting Notice on the communal bulletin board within the business establishment.[11]  Plaintiffs ask that the Notice be laminated and placed, in a manner easily readable, in a communal area where employees generally congregate with an envelope containing Consents.  Additionally, Plaintiffs request that Defendants be required, on a daily basis, to check to be sure this Notice has not been ripped down or otherwise defaced.  Defendants should also make sure, at the same time, that there are plenty of Consent forms available.

For all of the above means of disseminating notice, Plaintiffs would like to reserve the right to publish in both English and Spanish.

## CONCLUSION

For the reasons outlined above, Plaintiffs respectfully request that this court grant its motion for Conditional Certification of the Collective Action and authorize Notice be sent to putative class members.

**[SIGNATURE PAGE TO FOLLOW]**

---

[11]  *Blakely v. Berkeley County*, 2:13-cv-01364-PMD.

                                                                                      /s/ Bruce E. Miller

                                                    Bruce E. Miller (Fed Bar No. 3393)
                                                    BRUCE E. MILLER, P.A.
                                                    147 Wappoo Creek Drive, Suite 603
                                                    Charleston, SC  29412
                                                    T: 843.579.7373
                                                    F: 843.614.6417
                                                    bmiller@brucemillerlaw.com

                                                    **ATTORNEY FOR BRIANA LYNCH,**
                                                    **on behalf of herself and**
                                                    **all others similarly situated**

CHARLESTON, SC

April 7, 2015