UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Briana Lynch and Jacob Hyde, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Dining Concepts Groups, LLC d/b/a Wicked Tuna, Sandeep Patel, individually, and Erez Sukarchi, individually,<br><br>        Defendants. | C/A No.: 2:15-cv-580-PMD<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION** |

  Defendant Dining Group Concepts, LLC owns and operates the Wicked Tuna restaurant in Murrells Inlet, South Carolina. Defendants Sandeep Patel and Erez Sukarchi are owners of Wicked Tuna. Briana Lynch and Jacob Hyde are former employees of Wicked Tuna who worked as servers and bartenders at various times between May 2013 and July 2014. Lynch and Hyde claim Wicked Tuna violated the Fair Labor Standards Act ("FLSA") by requiring its employees to share a portion of their tips with "back of the house" employees. Lynch and Hyde now request this case be conditionally certified as a collective action on behalf of all similarly situated employees.

### SUMMARY OF ARGUMENT IN OPPOSITION

  Defendants have filed this Motion In Opposition to Plaintiffs' Motion for Conditional Class Certification because Plaintiffs' motion is premature at this time and Plaintiffs have not met their burden to conditionally certify a class in this matter. First, Plaintiffs' motion is premature because Plaintiffs' responses to Defendants' discovery requests regarding what appears to be Plaintiffs' solicitation of potential opt-in plaintiffs prior to conditional class certification leave the scope and details of such solicitations unclear. The receipt of further information concerning Plaintiffs' attorney's solicitations will directly affect this motion. Second, Plaintiffs' motion is supported by only one Affidavit, from Plaintiff Hyde, and a Memorandum from

Wicked Tuna dated March 28, 2014 regarding its tip pooling policy. Hyde's Affidavit contains no information relative to conditionally certifying a class but for one speculative sentence, and these two documents are not enough to carry Plaintiffs' burden at this stage nor to establish that the scope of the conditional class should encompass more than Wicked Tuna's servers and bartenders. For these reasons, Plaintiffs' motion should be denied. In the alternative, should the Court find the motion is ripe and that the Plaintiffs have met their burden, Defendants challenge Plaintiffs' proposed Notice ("Proposed Notice") on a number of grounds outlined herein.

## STATEMENT OF FACTS

Taken as true for the purposes of this Motion, the following is a statement of the allegations in Plaintiffs' Amended Complaint and Affidavits submitted by the parties. Defendant Wicked Tuna is owned and operated by Defendants Sandeep Patel and Erez Sukarchi. (Amended Complaint, paras. 7-8). Plaintiff Lynch was an employee of Wicked Tuna between April 2013 and June 2013 and was paid an hourly wage less than the statutory minimum wage by taking the tip credit under the FLSA, 29 U.S.C. § 203(m). (Id. at 16). Plaintiff Hyde worked as a server and bartender at Wicked Tuna from February 2014 until July 2014 and was paid at a rate less than the statutory minimum wage by taking the tip credit under the FLSA, 29 U.S.C. § 203(m). (Id. at 17), (Hyde Affidavit, paras. 2-3).

Wicked Tuna used a tip pooling system ("Tip Pool"), pursuant to FLSA, 209 U.S.C. § 203(m). (Amended Complaint, paras. 19-21). A portion of Wicked Tuna's servers' and bartenders' net sales each shift were remitted into the Tip Pool and distributed to other Wicked Tuna employees, including, but not limited to, back of the house staff. (Id. at 20-21). Wicked Tuna also charged its servers and bartenders a breakage fee of one dollar ($1.00) for costs associated with doing business. (Id. at 22). On March 28, 2014, Wicked Tuna issued and distributed a Memorandum to its servers and bartenders outlining the Tip Pool and breakage policies. (Id. at 19), (Hyde Affidavit, para. 4). Wicked Tuna ended its Tip Pool and breakage policies on October 5, 2014. (Patel Affidavit, paras. 3-4).

Plaintiffs allege that Wicked Tuna's Tip Pool was invalid because back of the house staff do not customarily and regularly receive tips pursuant to the FLSA, 29, U.S.C. § 203(m) and that the invalidation of the Tip Pool prohibits Wicked Tuna from paying Plaintiffs less than the statutory minimum wage of Seven and 25/100 ($7.25) per hour.  (Amended Complaint, paras. 29-31).  Relying upon these allegations, Plaintiffs seek damages for minimum wage and overtime violations of the FLSA.  (Id. at 33, 38).

## PROCEDURAL HISTORY

Plaintiff Lynch filed the original Complaint in this matter on February 9, 2015, wherein she alleged violations of the FLSA and pled for the recovery of minimum wages, overtime, tips, breakage, and liquidated damages.  Defendants filed an Answer on March 30, 2015 as well as a Motion to Dismiss, which sought to strike and dismiss from Plaintiff's Complaint those allegations seeking recovery of tips and breakage deductions on the ground that such are not recoverable under the FLSA.  With the Motion to Dismiss pending, Plaintiff filed this Motion for Conditional Certification and to Authorize Notice to Putative Class Members on April 7, 2015.  Meanwhile, on April 15, 2015, an Amended Complaint was filed with the addition of Jacob Hyde as a new party plaintiff and all sections of the original Complaint seeking the recovery of tips and breakage deleted.

Defendants filed a Motion for an Extension of Time to Respond to Plaintiffs' Motion for Conditional Class Certification on April 22, 2015.  Plaintiffs opposed the extension by Motion filed on April 24, 2015.  On April 29, 20015, the Court granted Defendants' Motion for an Extension of Time to Respond to Plaintiffs' Motion for Conditional Class Certification.  On April 29, 2015, the Court also ruled that, pursuant to the filing of Plaintiffs' Amended Complaint, Defendants' Motion to Dismiss was moot.  Defendants now respond to Plaintiffs' Motion for Conditional Class Certification with this Motion In Opposition.

## STANDARD OF REVIEW

The key issue in determining the appropriateness of conditional class certification is whether plaintiffs have demonstrated that potential class members are "similarly situated" to plaintiffs.  Williams v.

Long, 585 F.Supp.2d 679, 684 (D.Md. 2008) citing (Montoya v. S.C.C.P. Painting Contractors, Inc. No. CCB-07-445, 2008 WL 554114 at *1 (D.Md.Feb. 26, 2008)). This determination is left to the court's discretion and courts generally apply a two-stage approach, the first of which is the "notice" or "conditional certification" stage. Regan v. City of Charleston, S.C., No. 2:13-cv-3046, 2014 WL 3530135 at *2 (D.S.C. July 16, 2014). In the conditional certification stage, plaintiffs have the burden of demonstrating that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. Plaintiffs' initial burden requires only a "modest factual showing;" however, plaintiffs cannot rest upon mere allegations in the complaint, Camper v. Home Quality Management Inc., 200 F.R.D. 516, 519 (D.Md. 2000), and must "set forth more than 'vague allegations with meager factual support.'" Flores v. Unity Disposal & Recycling, LLC, No. GJH-15-196, 2015 WL 1523018 at *3 (D.Md. April 2, 2015); See Curtis v. Time Warner Entertainment-Advance/Newhouse P'shp, No. 3:12-cv-2370-JFA, 2013 WL 1874848 at *2 (D.S.C. May 3, 2013) (holding that plaintiffs must produce evidence beyond "mere speculation" that connects the manner in which the employer's alleged policy affected plaintiffs and the manner in which it affected other employees)). Some factual showing by affidavit or otherwise must be made. Camper, 200 F.R.D. at 519.

If plaintiffs meet their burden in the conditional class certification stage, the court will conditionally certify the class. Regan, No. 2:13-cv-3046, 2014 WL at *2. Once the class has been conditionally certified, the court has broad discretion to facilitate the details of notice sent to potential opt-in plaintiffs. Flores, No. GJH-15-196, 2015 WL at *5; See also Regan, No. 2:13-cv-3046, 2014 WL at *7. Courts have this "managerial responsibility to oversee the joinder of additional parties [for the purpose of ensuring] that the task is accomplished in an *efficient and proper way*." Curtis, No. 3:12-cv-2370-JFA, 2013 WL at *8. (holding that portions of Plaintiffs' proposed notice should be modified and denying a form of proposed notice in order to ensure notice was properly administered) (emphasis added); See also Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989) (holding that District Courts have managerial authority over notice to ensure that it is not misused and to counteract misleading communications). In accordance with this

responsibility, the District Court for the District of South Carolina has stated that there needs to be an accurate and timely notice concerning a pending collective action, "so that potential plaintiffs can make informed decisions about whether to participate." Regan, No. 2:13-cv-3046, 2014 WL at *7 (holding that misleading or unduly coercive sections of plaintiffs' proposed notice should be amended and/or stricken). Ultimately, plaintiffs have the burden of demonstrating that notice is appropriate. Houston v. URS Corp., 591 F.Supp. 827 (E.D.Va. 2008).

Finally, after a class has been conditionally certified, the potential class members have been identified and notified, and discovery has been completed, defendants may move that the class be decertified. Regan, No. 2:13-cv-3046, 2014 WL at *3. At this second stage of decertification, "the court applies a heightened fact-specific standard to the 'similarly situated' analysis." Id.

## ARGUMENT

### I. Plaintiffs' Motion Is Premature

Plaintiffs' Motion for Conditional Certification and to Authorize Notice to Putative Class Members should be denied because it is not ripe at this time. On April 9, 2015, Defendants served their First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Plaintiffs. Defendans sought to discovery the extent to which Plaintiffs' counsel solicited Plaintiff's and all opt-ins to-date. Included in these requests is an email solicitation ("Solicitation Email") Plaintiffs' attorney made to potential opt-in plaintiffs on or around January 22, 2015 and January 26, 2015, before commencing this action. The Solicitation Email, an authentic copy of which is attached hereto as EXHIBIT A, was directed to Wicked Tuna employees and may have included non-client employees of Wicked Tuna. The email requests that its recipients have any other current or former servers or bartenders from Wicked Tuna or any other restaurant in South Carolina contact Plaintiffs' attorney. An opt-in consent form was also attached to the email.

Based upon the Solicitation Email, it would appear that counsel was directly soliciting current employees of Wicked Tuna to join in this lawsuit via email in the months that preceded the filing of this

lawsuit - potentially at a time when counsel was aware that Defendants' counsel represented Wicked Tuna. The Solicitation Email contains what seemingly were direct solicitations of current employees based upon a direct solicitation letter authored by counsel and not approved by this Court. The letter also contains a material misrepresentation of this lawsuit that will likely cause confusion amongst its recipients:

> We plan to file this action next week. If anyone has decided not to participate, please reply & advise by Monday. We are still seeking recovery for the minimum wages ($7.25 - $2.13 = $5.12) for all hours you worked + the tips that were deducted from you (tip-out & breakage) and then have this total doubled (Liquidated Damages). We also will seek from Defendants all of your attorneys' fees & costs.

(Solicitation Email, para. 2).

As argued previously in Defendants' Motion to Dismiss, deductions are not recoverable damages under the FLSA. Counsel's Amended Complaint acknowledged as much. More problematic, however, is counsel's representation that "all of your attorneys' fees & costs" will be sought. Plaintiffs' counsel previously represented to the undersigned counsel that such is not true. Rather, his fee agreement with his clients will seek one-third of a recovery of both damages available under the FLSA and those attorney's fees recovered as well. In other words, the class members will not receive all damages to which they may be entitled under the FLSA; they will ultimately recover, if successful, all damages recoverable under the FLSA, <u>less costs and a 1/3 contingency fee</u>.

Defendants' discovery requests seek information regarding the means by which each named plaintiff and opt-in plaintiffs were solicited to join in this action. The requests include, in pertinent part, the following:

> Explain the means by which the law office of Bruce E. Miller obtained the email addresses of the recipients of the [Solicitation Email] and the reason why these emails were sent to individuals who were not clients of the law office of Bruce E. Miller.
>
> Identify all communications and solicitations of any nature and kind that the law office of Bruce E. Miller, or any agent, representative or contractor thereof, has made with any current or former employee of Defendant regarding their participation in this lawsuit or the subject matter thereof.
>
> Produce a list of all individuals to who[m] the [Solicitation Email] was sent.

Page 6 of 21

>    Produce a list of all individuals who were in the group identified as "Bruce E. Miller" in the email dated January 22, 2015.
>
>    Produce a list of all individuals who were in the group identified as "Bruce E. Miller" in the email dated January 26, 2015.
>
>    Produce copies of and/or identify any and all documents, software systems, or other matters which identify current or former employees of Wicked Tuna that the law office of Bruce E. Miller was in possession, custody, or control of prior to the commencement of this lawsuit.
>
>    Produce a copy of any and all emails, letters, or other forms of correspondence sent by or on behalf of the law office of Bruce E. Miller to any individual who was not a client of the law office of Bruce E. Miller, P.A.
>
>    Admit that the [Solicitation Email and/or emails] were disseminated or sent to current or former employees of Defendant who were not a client of the law office of Bruce E. Miller, P.A.
>
>    (Defs.' Second Set of Int., paras. 31-32), (Defs.' Second Set of Requests For Prod., paras. 18-21), (Defs.' Requests For Admissions, para. 8).

Defendants also served these discovery requests upon each of the individual opt-in plaintiffs seeking information as to how they became aware of and/or involved in this lawsuit. (See Exhibit B).

Defendants received Plaintiffs' responses to Defendants' discovery requests on May 11, 2015. In their responses, all of the plaintiffs admit that they received the Solicitation Email. However, all of the plaintiffs also responded that they do not have knowledge as to the remainder of the aforementioned requests. A number of the plaintiffs indicated that if they could find a copy of any solicitations and/or communications they received in regards to this case from anyone, including Plaintiffs' attorney, they would supplement their responses. Based upon these responses, the extent of Plaintiffs' attorney's potential direct solicitation of non-clients remains largely unknown.

At the heart of these pending discovery requests is the issue of whether this Court should allow e-mail as a means by which notice should be either disseminated to prospective class members or used to opt-in to this lawsuit. Similarly, the extent to which Plaintiffs and opt-in Plaintiffs were solicited is relevant to the issue of equitable tolling in this case. Also relevant is the period of time for potential plaintiffs to opt-in

(i.e. if this Court should discover that Plaintiffs' attorney has been directly soliciting opt-in plaintiffs since before this lawsuit was initiated, the Court may find it appropriate to shorten the period of time for potential plaintiffs to opt-in). Pending discovery of additional information from Plaintiffs, the Solicitation Email sent by Plaintiffs' attorney appears to circumvent this Court's supervisory role by which prospective class members are to be notified of their right to join in this lawsuit.

Importantly, the Solicitation Email highlights the danger of disseminating electronic communications regarding class notices and demonstrates that Plaintiffs' attorney's prejudice argument lacks equity. The conditional class certification process is 1) designed for lawyers to sign up a truly representative, aggrieved client and then 2) utilize the Court's supervisory system to, in essence, solicit class members to join in the representative's lawsuit. After review of Plaintiffs' discovery responses, its unclear whether that process has been followed in this case.

Also noteworthy, Plaintiffs' attorney maintains a website with a page dedicated to "Tipped Employees" which, comparable to the Solicitation Email, contains potentially misleading information regarding the damages plaintiffs in FLSA lawsuits may obtain and costs for which they could be held accountable. For example, the website provides the following breakdown of damages in a FLSA violation case:

> If a server averaged 40 hours per week for 3 years, they may be entitled to the following:
>
> Actual damages: $30,712.00
> Liquidated Damages: $30,712.00
> Attorneys Fees & Costs: $ All
>
> (Exhibit C).

This damage breakdown, as illustrated, does not account for the fact that Plaintiffs' counsel will deduct his own attorney's fees and costs from any potential recovery. Therefore, potential plaintiffs could easily be misled to believe their recovery will be higher than what it would actually be after counsel's deductions.

In addition to his website, Plaintiffs' counsel maintains a Facebook page, on which posts are routinely made soliciting potential opt-in plaintiffs to join the numerous FLSA suits he has instituted against restaurants across South Carolina. These posts include hash tags such as "#tippedemployees", which allow users to conduct a search of all posts across Facebook "tagged" with "tippedemployees" to discover pages such as Plaintiffs' attorney's. A number of these posts also include the same misleading representations as the Solicitation Email and website regarding FLSA damages, costs, and fees. One such post made on July 23, 2014 states, "It will cost you nothing to join this lawsuit." (Exhibit D). While this may be true when a class member initially opts-in, it is certainly a misrepresentation in light of the fact that Plaintiffs' counsel will deduct costs and fees from plaintiffs' recovery.

Additionally, on July 19, 2014, Plaintiffs' counsel posted a solicitation on the Facebook page to join one of his lawsuits against a seafood restaurant in Charleston prior to conditional class certification. Id. The post states, in pertinent part:

> [W]e believe Hymans owes you damages (money) for taking a portion of your tips for 'breakage' and other illegal deductions. Eight individuals have joined so far, & we expect there may be hundreds more to join. We will ask the federal court to certify it as a Collective (Class) Action. If you would like more free information email me..."

Id.

Many of the other posts on the Facebook page contain similar solicitous language and even further request that individuals notify friends and family members of the lawsuit if they have worked for any of the defendant employers. Id. These posts are blatant abuse of what is supposed to be a court supervised notification process. See Bouder v. Prudential Financial, Inc., No. 06-CV-4359, 2007 WL 3396303 at *2 (D.N.J. Nov. 8, 2007) (holding that outside the context of a notice process supervised by the Court, neither plaintiffs' attorney nor individual plaintiffs are permitted to send unsolicited notices regarding the case to putative FLSA class members who are not yet parties to an action). Both Plaintiffs' attorney's website and his Facebook page illustrate the dangers of electronic solicitation, the difficulty to control electronic forms of solicitation, and its susceptibility to abuse.

In sum, Defendants are entitled to know the extent to which Plaintiffs' counsel has gone to usurp the Court's role in facilitating notice prior to filing this action and prior to conditional certification. Furthermore, Defendants are entitled to know whether the Solicitation Email was the ice burg or the tip of the ice burg. Because the answers to these questions will weigh heavily upon Defendants' arguments regarding the Proposed Notice, the means by which the notice is to be disseminated, and the Court's supervisory role, Plaintiffs' Motion for Conditional Class Certification is not ripe at this time.

## II. Plaintiffs Have Not Met Their Burden For Conditional Class Certification

Plaintiffs' Motion for Conditional Certification and to Authorize Notice to Putative Class Members should be denied because Plaintiffs have not demonstrated that Wicked Tuna's Tip Pool violated the law and have failed to carry their burden of showing that the proposed class members are "similarly situated". Additionally, Plaintiffs have failed to demonstrate that the scope of the conditional class should encompass all employees of Wicked Tuna.

As previously stated, Plaintiffs have the burden of demonstrating that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." Regan v. City of Charleston, S.C., No. 2:13-cv-3046, 2014 WL 3530135 at *2 (D.S.C. July 16, 2014). While the standard for conditional class certification is "fairly lenient", the "'similarly situated' requirement is not, however, invisible." Houston, 591 F.Supp.2d at 831 citing (Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164 (D.Minn. 2007)). Plaintiffs are required to "submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists." Camper, 200 F.R.D. at 520 citing (Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)). In Camper, a fourth circuit case, the District Court for the District of Maryland cites to a decision in which conditional class certification was denied "because the only evidence of similarly situated class members was conclusory affidavits stating the individuals' beliefs that others had been subjected to similar discrimination." 200 F.R.D. at 520 citing (H&R Block, Ltd. v. Housden, 186 F.R.D. 399 (E.D.Texas 1999)). District Courts have consistently held that such mere speculation is not enough to

meet the burden of conditional class certification. Curtis, No. 3:12 cv-2370-JFA, 2013 WL at *2; See also Vasquez v. American Bor-Trench, Inc., No. 4:12-CV-3181, 2014 WL 297414 (S.D.Texas Jan. 23, 2014) (holding that where plaintiffs did not set forth any evidence regarding distinctions between job titles, duties, or exempt status, the Court refused to certify a class of all defendants' employees and that declarations asserting that other employees worked the same number of hours and were also paid the same way were too speculative).

### A. Plaintiffs Have Not Established That Wicked Tuna's Tip Pool and Breakage Policies Violated the Law

Plaintiffs have failed to establish that Wicked Tuna had a common plan or policy that violated the law. Neither Plaintiffs' Amended Complaint, nor Plaintiff Hyde's Affidavit state that Plaintiffs were required to remit *tips* into a tip pool. Instead, both documents state that five percent (5%) of employees' *net sales* each shift were contributed into a Wicked Tuna Tip Pool. (Hyde Affidavit, para 5), (Amended Complaint, para. 20). This is an important distinction, as the foundation of Plaintiffs' case against Defendants rests upon the required remittance of an employee's *tips* into an allegedly invalid tip pool in order for there to be violation of the FLSA. Furthermore, Plaintiffs have not submitted any other evidence, such as check stubs or tax documentation, that show illegal deductions from their pay.

Plaintiffs have also not submitted any proof distinguishing which "back of the house" employees received tips from the Wicked Tuna tip pool. Cases from around the United States have rejected the notion that all "back of the house" employees may not share in a tip pool. See Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 301 (6th Cir. 1998) (stating that employees who receive tips from a tip pool are employees who "'receive tips' according to the Department of Labor regulations, case law, and Department of Labor practices"), Montano v. Montrose Rest. Assocs., No. H-12-153, 2014 U.S. Dist. LEXIS 14029, at *3 (S.D. Tex. Feb. 4, 2014) (holding that a "worker who is not tipped by or did not interact with diners may legally participate in a tip pool" and identifying service bartenders as one such example), Lentz v. Spanky's

Rest. II Inc., 491 F.Supp.2d 663, 670 (N.D. Tex. 2007) (holding that there is no clear precedent that defines expediters as employees who do not customarily and regularly receive tips), Davis v. B & S, Inc., 38 F.Supp.2d 707, 717 (N.D. Ind. 1998) (holding that tip pools in which some employees receive money from the pool without contributing to it are not *per se* invalid). Therefore, because Plaintiffs have not shown that they were individually harmed by Wicked Tuna's allegedly invalid Tip Pool and have failed to distinguish between which "back of the house" employees received tips, Plaintiffs have not demonstrated Wicked Tuna's policies violated the FLSA.

### B. Plaintiffs Have Not Demonstrated That the Proposed Class is "Similarly Situated"

Plaintiffs have also failed to demonstrate that the proposed class is "similarly situated" to Plaintiffs. Hyde's Affidavit contains only one assertion regarding other Wicked Tuna employees, in which it states, "Wicked Tuna employed individuals in various support staff positions that were also paid an hourly rate less than the minimum wage of $7.25 per hour." (Hyde Affidavit, para. 9). This assertion is purely speculative. It does not provide any factual basis upon which the Court could identify which other Wicked Tuna employees are similarly situated to Plaintiffs, nor does it demonstrate how other employees are similarly situated to Plaintiffs. The assertion is also nearly identical to those made by counter-plaintiffs in H&R Block, where the District Court for the Eastern District of Texas denied conditional class certification because the counter-plaintiffs' affidavits were too speculative. 186 F.R.D. 399 (E.D.Texas 1999).

Comparable to the Plaintiffs in this case, in H&R Block, the counter-plaintiffs submitted just two affidavits which contained statements of their belief that other workers were discriminated against in similar ways. Id. After analysis, the District Court in H&R Block held that the affidavits were insufficient to carry the counter-plaintiffs' burden on conditional class certification, as they contained only conclusory, unsupported factual allegations. Id. In another District Court case, the District Court for District of Maryland similarly denied conditional class certification to plaintiffs. D'Anna v. M/A-COM, Inc., 903 F.Supp. 889, (D.Md. 1995). In D'Anna, the District Court stated, "Plaintiff has done nothing more than identify eleven

Page 12 of 21

individuals who are over forty years of age...[t]he mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are 'similarly situated.'" Id. at 893.

Here, Plaintiffs have rested solely upon a single affidavit and the Wicked Tuna Memorandum. Just as they have not submitted any additional evidence which would show that they, themselves, were harmed by a common plan or policy, Plaintiffs have also not submitted any evidence demonstrating *how* a conditional class is "similarly situated" to them. Again, while the standard for conditional class certification may be lenient, it is not invisible. Houston, 591 F.Supp.2d at 831 citing (Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164 (D.Minn. 2007)). Therefore, Plaintiffs have failed to carry their burden of demonstrating that the proposed class is similarly situated for conditional class certification.

### C. The Scope of Plaintiffs' Proposed Class Is Inappropriate and Should Be Limited to Only Servers and Bartenders Who Worked Prior to October 5, 2014

The evidence Plaintiffs have submitted in support of their motion is further insufficient to demonstrate that the scope of Plaintiffs' Proposed Class should encompass *all* employees of Wicked Tuna "who at any time were paid an hourly rate less than the statutory minimum wage...and either contributed money to a tip pool *or received money from a tip pool*." (Plaintiffs' Mot. for Cond. Class. Cert., p. 4) (emphases added). In the alternative, the evidence in the record clearly shows that Plaintiffs' proposed class should be limited to only Wicked Tuna's servers and bartenders who worked prior to October 5, 2014.

In the Vasquez case, the District Court for the Southern District of Texas denied conditional class certification to plaintiffs because they did not set forth any evidence of distinctions in positions, duties, or exempt status of other employees in their affidavits. No. 4:12-CV-3181, 2014 WL 297414 (S.D.Texas Jan. 23, 2014). The District Court in Vasquez held that where plaintiffs had submitted affidavits which only asserted that other employees worked the same number of hours, without further factual support, those affidavits were too speculative to carry their burden. Id. Similarly, Hyde's Affidavit fails to set forth evidence regarding distinctions between the positions, duties, or exempt status of other employees at Wicked

Tuna. Hyde makes one blanket assertion that other employees "in various staff positions" were paid less than minimum wage. (Hyde's Affidavit, para. 9). This speculative assertion, without any other supporting evidence, renders Hyde's Affidavit insufficient as proof under Plaintiffs' burden to demonstrate that the scope of Plaintiffs' proposed class should encompass all Wicked Tuna employees.

Contrary to Hyde's speculative assertion, Wicked Tuna paid all of its employees, other than servers and bartenders, at or above the statutory minimum wage of $7.25 per hour from its opening in March 2013 until October 5, 2014. (Patel Affidavit, para. 5). The Wicked Tuna Memorandum, submitted by Plaintiffs, also evidences this fact, as it is addressed only to *servers and bartenders*, the positions held by Plaintiffs Lynch and Hyde, rather than all Wicked Tuna staff. Furthermore, Wicked Tuna ended the Tip Pool and breakage policies alleged to have violated the FLSA, on October 5, 2014. (Patel Affidavit, paras. 3-4). Thus, not only should the scope of the conditional class be limited to servers and bartenders, it should be limited to servers and bartenders who worked prior to October 5, 2014. Id.

Finally, there is nothing in Hyde's Affidavit or any other evidence in the record to indicate why an employee who *received* tips in the Wicked Tuna tip pool should be encompassed in the conditional class per Plaintiffs' request. Plaintiffs have only asserted FLSA claims against Wicked Tuna based upon the required *remittance* of tips into an allegedly invalid Tip Pool, and such claims do not encompass those employees who only received tips. Therefore, based upon the documents Plaintiffs have submitted in support of their motion and the evidence in the record, Plaintiffs have not carried their burden in demonstrating that *all* Wicked Tuna employees are "similarly situated". The scope of Plaintiffs' proposed class should be limited to Wicked Tuna's servers and bartenders who worked prior to October 5, 2014 accordingly.

In the event the Court grants Plaintiffs' motion, limiting the scope of the conditional class to Wicked Tuna's servers and bartenders who worked before October 5, 2014 is particularly important. In their motion, Plaintiffs' have requested that Defendants' produce the names, dates of employment, addresses, telephone numbers, and email addresses of *all* Wicked Tuna employees who have been paid less than statutory minimum wage. Plaintiffs' motion also seeks to define the class to include those who *received* money from

a tip pool. Similarly, Plaintiffs' Proposed Notice is addressed to employees of Wicked Tuna who at anytime were paid less than the statutory minimum wage. Producing documents and providing notice encompassing these categories of people without the scope being narrowed properly will create confusion and disruption amongst Wicked Tuna employees, as this broad class contains employees who do not have FLSA claims as alleged by Plaintiffs, and some of whom are current employees who never contributed money into a tip pool in which "back of the house" employees received tips.

After October 5, 2014, Wicked Tuna began to pay hostesses less than the statutory minimum wage, by taking the tip credit under FLSA, 29 U.S.C. § 203(m). (Patel Affidavit, para. X). Therefore, if the scope of Plaintiffs' proposed class is not narrowed, production of documents and notice would encompass these hostesses, who have never, at any time, participated in the allegedly invalid Tip Pool and breakage policies which are the basis of Plaintiffs' Amended Complaint. As proposed by Plaintiffs' the production and notice would also encompass servers and bartenders who have worked after October 5, 2014 and have never participated in the allegedly invalid policies. Further, as argued above, there is no evidence that employees who *received* tips have a valid FLSA claim against Wicked Tuna. Therefore, allowing production and notice with regard to *all* Wicked Tuna employees would be a major disruption and could attract potential plaintiffs who are not similarly situated as to the issues in this case. Thus, to ensure a proper and efficient discovery process and notice period, the scope of the proposed class should be appropriately limited to Wicked Tuna's servers and bartenders who worked prior to October 5, 2014.

In sum, Plaintiffs' speculative allegations and meager factual support fail to meet the standard for conditional class certification and their Motion for Conditional Class Certification should be denied. Plaintiffs rely upon only one affidavit and one memorandum, which is insufficient evidence to carry their burden of establishing Wicked Tuna's policies violated the law and that the proposed conditional class is "similarly situated" to Plaintiffs. The Court should also limit the scope of the conditional class to only Wicked Tuna's servers and bartenders who worked before October 5, 2014, in accordance with the evidence in the record and in the interest of conducting discovery and notice both efficiently and properly.

### III. The Content and Form of Plaintiffs' Proposed Notice Is Inappropriate

In the alternative, should the Court find that Plaintiffs' Motion is ripe and that Plaintiffs have met their burden for conditional class certification, Defendants challenge Plaintiffs' Proposed Notice on the grounds detailed within this section. Also attached to this Motion In Opposition, the Court shall find Defendants' proposed notice form ("Notice Form"), which reflects these changes as argued herein and any additional changes not detailed within this Section.

#### A. The Proposed Class Notice Should Be Limited to U.S. Mail Only

Notice to potential opt-in plaintiffs should be limited to U.S. Mail because Plaintiffs have failed to demonstrate the necessity of sending notice by any other means, electronic notice lacks formality, electronic notice has a high propensity for abuse, and Plaintiffs may have already abused the use of email notice by soliciting potential opt-in Plaintiffs prior to conditional class certification.

The Supreme Court of the United States has clearly held that in collective actions under 29 U.S.C. 216(b), such as this case, District Courts have managerial authority over notice to ensure that it is not misused. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989). This supervision is necessary as it may counteract misleading communications. Id. at 171. In accordance with its managerial role, this District Court recently denied class notice by email, holding that notice by email was unnecessary. Regan v. City of Charleston, SC, 40 F.Supp.698 (D.S.C. 2014). Likewise, District Courts across the United States have held that the use of notification by means other than U.S. Mail is only appropriate when Plaintiffs demonstrate its necessity. See Ott v. Publix Super Markets, Inc., 298 F.R.D. 550 (M.D.Tenn. 2014), Bland v. Calfrac Well Services Corp., No. 2:12-cv-01407, 2013 WL 4054594 (W.D.Penn. Aug. 12, 2013), Vargas v. General Nutrition Centers, Inc., No. 2:10-cv-867, 2012 WL 5336166 (W.D.Penn. Oct. 26, 2012). Because the court has discretion in the form of notice sent to potential opt-in plaintiffs, when deciding whether to compel production of email addresses and telephone numbers for notice purposes, the following factors must be considered: "(1) whether the plaintiff argues that U.S. Mail is inadequate; (2) whether communication to potential class members will be controlled or could be distorted; (3) whether communication will be

disruptive; and (4) whether communication will be intrusive upon privacy." Ott, 298 F.R.D. at 555.  Plaintiffs must also provide a rationale for the use of email or telephone notice.  Id.

First, Plaintiffs have provided no rationale for the necessity of using email and text message notice, and nothing in Plaintiffs' motion indicates why U.S. Mail would be insufficient as a form of notice to a conditional class.  Thus, for this reason alone, the form of notice should be limited to U.S. Mail.  See Regan, No. 2:13-cv-3046, 2014 WL at *6 (holding that absent special need, production of phone numbers and email addresses for notice purposes should be denied).

Second, electronic notification lacks the formality of U.S. Mail.  U.S. Mail has been used as a form of notice to conditional classes for decades, proving that it can be distributed properly and in an efficient manner.  Courts have a greater ability to control notice by U.S. Mail, as it is less likely to be distorted or abused in its print form.  See  Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 630 (D.Colo. Sept. 24, 2002) (holding that providing notice by mail "ensures the integrity of a judicially controlled communication directed to the intended audience.").  Likewise, providing addresses of potential class members is less invasive and intrusive upon those potential class members because U.S. Mail is run by a uniform system, whereas email and text messaging can be used at all hours, in any number of ways.  This formality is something that has sustained the courts' ability to supervise notice properly.

Third, courts have found that electronic notice has a high propensity for abuse.  In Reab, the District Court states, in pertinent part:

> [E]lectronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.  Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process.  In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

Id. at 630-31.

Again, electronic communication has the potential for widespread misuse, as it is difficult to control or monitor. While mail travels by a formal system, email and text messaging can be particularly invasive, arriving at all hours and getting sent to people outside of the conditional class.

Finally, and perhaps the greatest example of how electronic notice may be misused, is what appears to be Plaintiffs' solicitation of potential opt-in plaintiffs prior to conditional class certification. Soliciting potential plaintiffs outside the context of a notice process supervised by the Court "usurps [the] Court's power and statutory duty to oversee the FLSA-mandated process for court-facilitated notice to potential collective action members, including the fair content of such notice." Bouder v. Prudential Fin., Inc., No. 06-CV-4359, 2007 WL 3396303 at *2 (D.N.J. Nov. 8, 2007). As discussed in detail in Section I of this Memorandum, it appears that Plaintiffs and/or their counsel have already usurped their authority. However, regardless of what pending discovery responses reveal, Plaintiffs have, at the very least, shown just how difficult it can be to control the manner in which electronic notice is used.

For foregoing reasons, electronic notice is not appropriate in this case and notice should be limited to U.S. Mail only. All references to notice by email or text message should be deleted from the Proposed Notice accordingly.

**B. The Proposed Notice Should State that the Client Is Responsible for Costs and Contain An Explanation of Plaintiffs' Attorney's Fees**

An explanation of how Plaintiffs' attorney's fees are to be calculated should be added to Plaintiffs' Proposed Notice within both its body and the Consent to Join Lawsuit form. In its current state, the Proposed Notice indicates that potential opt-in plaintiffs will owe no fees or costs should there be no recovery. This language needs to be reworded to include a full explanation of how Plaintiffs' attorney's fees shall be calculated and to alert potential opt-in plaintiffs of their exposure to liability for costs, as it is misleading in its current state.

The fee agreement Plaintiffs' attorney has represented to counsel is that he will seek one-third of a recovery of both damages available under the FLSA and those attorney's fees recovered as well. Therefore,

the Proposed Notice should include an explanation that the class members will not receive all damages to which they may be entitled under the FLSA; and that they will ultimately recover, if successful, all damages recoverable under the FLSA, <u>less costs and a 1/3 contingency fee</u>.

**C. The Proposed Notice Should Reflect all Changes Made In Plaintiffs' Amended Complaint**

Plaintiff Lynch filed this Motion and Proposed Notice prior to filing her Amended Complaint. As such, portions of the Proposed Notice do not reflect the changes in the Amended Complaint, such as the addition of Jacob Hyde as a party and the removal of damage claims seeking the return of tips and breakage. All sections of the Proposed Notice that do not reflect the changes in the Amended Complaint should be deleted or reworded.

**D. Plaintiffs Should Be Responsible For Paying the Cost of Administration, Not Defendants**

Plaintiffs in this matter should be responsible for paying all costs resulting from the administration of the class. Defendants have no obligation to pay such costs, as Plaintiffs have the burden of proving their case.

**E. The Opt-In Period Should Be Thirty (30) Days**

Plaintiffs' opt-in period should be limited to thirty (30) days rather than forty-five (45) days. Plaintiffs have no compelling argument for extending the opt-in period, as it appears they solicited potential opt-in plaintiffs over three months ago, in January 2015, prior to the initiation of this lawsuit.

**F. Sections of the Proposed Notice Which Defendants Have Denied Should Be Deleted or Changed**

Sections of Plaintiffs' Proposed Notice include allegations which Defendants have denied in their Answer and should be either changed or deleted to reflect Defendants' denial. In pertinent part, these sections of the Proposed Notice state:

> Plaintiffs have sued Wicked Tuna in federal court in Charleston, South Carolina, claiming that Wicked Tuna violated the Fair Labor Standards Act by maintaining an improper tip pool by retaining employees' tips for 'breakage' and to be redistributed to 'back of the house' employees. (Proposed Notice, p. 1).

> The lawsuit is seeking to recover unpaid minimum wages; overtime pay; return of all tips that were deducted by Wicked Tuna; 'liquidated damages,' (doubles all of these amounts); and attorneys' fees and costs. (Proposed Notice, p. 2).

Defendants have denied both that the Tip Pool was improper and all damages claims seeking the return of tips. These sections should be either deleted or reworded pursuant to Defendants' proposed Notice Form to notify prospective class members that Wicked Tuna has filed an Answer denying these allegations.

**G. The Proposed Notice Should State That it is Being Sent By a Third Party Administrator**

Plaintiffs' Proposed Notice should contain a clause notifying potential class members that it is being sent by a third party administrator. This clause will ensure that the Proposed Notice does not mislead potential class members.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Conditional Certification and to Authorize Notice to Putative Class Members. In the alternative, should the Court grant Plaintiffs' Motion, the Court should approve Defendants' changes to Plaintiffs' Proposed Notice.

Respectfully submitted,

**BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A.**

s/Benjamin A. Baroody
Benjamin A. Baroody
District Ct. I.D. No. 9442
Post Office Box 357
Myrtle Beach, SC 29578-0357
843-448-2400
Attorneys for the Defendants