# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Briana Lynch and Jacob Hyde, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A.: 2:15-cv-580-PMD |
| v. | ) ) ) | **ORDER** |
| Dining Concepts Group, LLC d/b/a/ Wicked Tuna; Sandeep Patel, individually; and Erez Sukarchi, individually, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on Plaintiff Briana Lynch and Plaintiff Jacob Hyde's Motion, on behalf of themselves and all others similarly situated ("Plaintiffs"), for Conditional Class Certification ("Motion") pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (ECF No. 19). For the reasons set forth herein, Plaintiffs' Motion is granted in part and denied in part.

## BACKGROUND

On February 9, 2015, Plaintiffs commenced this action on behalf of themselves and others similarly situated, seeking unpaid minimum wages and unpaid overtime wages pursuant to the FLSA. The named Plaintiffs, as well as those who have subsequently given notice of their consent to join this action, are current or former employees of Defendant Dining Concepts Group, LLC, doing business as Wicked Tuna ("Wicked Tuna"). Plaintiffs seek recovery from Wicked Tuna, Sandeep Patel, and Erez Sukarchi (collectively "Defendants").

Plaintiffs primarily allege that Defendants used a tip pool that violated the FLSA. Plaintiffs assert that Defendants paid some of their employees an hourly wage lower than the statutory minimum wage using the FLSA's Tip Credit provision, 29 U.S.C. § 203(m). Plaintiffs further assert that while Defendants were paying Plaintiffs less than the statutory minimum wage using the FLSA's Tip Credit provision, Defendants required Wicked Tuna employees to contribute a portion of their net sales to Defendants' tip pool to compensate other employees, as well as paying Defendants a $1.00 breakage fee each work day. Additionally, Plaintiffs allege that some of the employees who received money from the tip pool were back-of-the-house employees[1] who did not qualify to share in the tip pool because they did not customarily and regularly receive tips. Because these back-of-the-house employees did not customarily and regularly receive tips, as required by the Tip Credit provision, Plaintiffs allege that the tip pool they shared with the back-of-the-house employees violated the FLSA. Finally, Plaintiffs state that charging a breakage fee to employees who are paid using the Tip Credit "is a clear violation of the FLSA; thus a loss of the Tip Credit." (Reply to Defs.' Resp. Opp'n Pls.' Mot. for Conditional Certification, ECF No. 35, at 2.)

Defendants deny that the tip pool and breakage fees violated the FLSA because Plaintiffs were not required to remit *tips* into the tip pool. Instead, Defendants assert that Plaintiffs were only required to remit a percentage of their net sales into the tip pool. As a result, Defendants allege that because no tips were remitted into the tip pool, there can be no violation of the FLSA. Additionally, Defendants assert that Plaintiffs have submitted insufficient evidence to: (1) show that they were required to remit tips into a tip pool; (2) show that Defendants made illegal

---

1. Among others, kitchen employees are usually an example of back-of-the-house staff. *See Sorensen v. CHT Corp.*, Nos. 03 C 1609, 03 C 7632, 2004 WL 442638, at *1 (N.D. Ill. Mar. 10, 2004).

2

deductions from Plaintiffs' pay; and (3) distinguish between back-of-the-house employees who were entitled to share in the tip pool and back-of-the-house-employees who were not.

## PROCEDURAL HISTORY

On April 7, 2015, Plaintiffs filed a Motion for Conditional Certification. Defendants then filed a Motion for Extension to File a Response on April 22, 2015. Plaintiffs responded in opposition to Defendants' Motion for Extension on April 24, 2015. On April 29, 2015, the Court granted Defendants' Motion for an Extension while tolling the statute of limitations during the extension period.[2] Defendants filed a Response to Plaintiff's Motion for Conditional Certification on May 20, 2015. Plaintiffs filed a Reply on May 28, 2015. Accordingly, this matter is now ripe for consideration.

## LEGAL STANDARD

Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and similarly situated employees. The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The mechanism outlined in § 216(b) is designed to facilitate the efficient adjudication of similar claims by "similarly situated" employees, permitting the consolidation of individual claims and the pooling of resources in prosecuting such actions against their

---

2. The Court granted equitable tolling in this specific instance because Defendants requested and received an extension of time a mere two days before their response to Plaintiffs' Motion for Conditional Certification was due. Plaintiffs had diligently pursued their rights and the rights of potential class members and were therefore not barred from equitable tolling by their own conduct. *See Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (citing *Chao v. Va. Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)). The Court declines to continue tolling the statute of limitations through the notice period because there are no additional exceptional circumstances that so require.

employers. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d. 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014 WL 2121563 (E.D. Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20, 2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007). In deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs, courts generally employ a two-stage approach.[3] *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); *see also Regan v. City of Charleston*, No. 2:13-cv-03046-PMD, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at *1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process, which is the subject of the instant Motion, is the "notice," or "conditional certification," stage. *Purdham*, 629 F. Supp. 2d at 547. Here, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" so that they can "opt-in" to the collective action. *Pelczynski*, 284 F.R.D. at 367–68. With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to

---

3. Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d. at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process . . . .").

4

potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard," *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011), requiring plaintiffs to make a "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional

5

"decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at *2; *see Pelczynski*, 284 F.R.D. at 368. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (internal quotation marks omitted). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiffs to proceed on their individual claims. *Id.*

## ANALYSIS

Plaintiffs specifically request that this Court enter an Order: (1) conditionally certifying a class of individual restaurant employees ("Proposed Class"), as detailed further herein; (2) requiring Defendants to produce the names, addresses, telephone numbers, email addresses, and dates of employment for all members belonging to the Proposed Class; (3) authorizing Plaintiffs' counsel to send a court approved notice to members of the Proposed Class by both U.S. Mail and email; (4) authorizing Plaintiffs' counsel to send a text message containing a reduced notice to any member of the Proposed Class whose notice sent by U.S. Mail is returned as undeliverable; and (5) authorizing Plaintiff's counsel to post a laminated notice, with an adjacent envelope containing consents, in a communal area within Wicked Tuna. The Court will address each request in turn, along with Defendants' objections thereto.

### I. Conditional Certification

Plaintiffs move to conditionally certify the following Proposed Class:

6

> All Wicked Tuna employees who at any time were paid an hourly rate less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool.

(Pls.' Mem. Supp. Mot. for Conditional Class Certification, ECF No. 19-1, at 4.)

Defendants assert that Plaintiffs have not produced sufficient evidence to meet the burden of class certification because "[p]laintiffs have failed to establish that Wicked Tuna had a common plan or policy that violated the law." (Defs.' Mem. Opp'n Pls.' Mot. for Conditional Class Certification, ECF No. 34, at 11.) Defendants allege that because Wicked Tuna employees were required to remit a percentage of their *net sales* into a tip pool, not their tips, Defendants' tip pool does not violate the FLSA. Defendants also assert that Plaintiffs have not distinguished between back-of-the-house employees who are eligible to share in a tip pool and back-of-the-house-employees who are not. Defendants further assert that Plaintiff Jacob Hyde's affidavit is insufficient to show that the proposed class is similarly situated to the named Plaintiffs. Finally, Defendants assert that any proposed class should be limited to servers and bartenders who worked prior to October 5, 2014.

Plaintiffs have produced factual evidence in the form of an affidavit by Plaintiff Jacob Hyde and a memo issued by Wicked Tuna explaining its tip-out policy. The Court finds that the memo issued by Wicked Tuna is sufficient factual evidence to support Plaintiffs' allegations that the Proposed Class is similarly situated to the named Plaintiffs. While Defendants correctly point out that Plaintiffs have not produced evidence about the varying responsibilities and positions of Wicked Tuna employees, their argument is better suited for the optional de-certification stage. *See Pelczynski*, 284 F.R.D. at 368. At the conditional certification stage, Plaintiffs have produced evidence that Wicked Tuna employed a common scheme or policy of charging their servers and bartenders a percentage of their net sales to be remitted into a tip pool,

7

as well as a $1.00 breakage fee for each work day. Additionally, through the affidavit of Jacob Hyde, Plaintiffs have shown that a named Plaintiff is similarly situated to the putative class members. Hyde was both a server and a bartender at Wicked Tuna. He was subject to the tip pool and breakage fee requirements, and is thus similarly situated to other servers and bartenders at Wicked Tuna. The Court finds that this is sufficient evidence to demonstrate that the Proposed Class is similarly situated to at least one of the named Plaintiffs. Thus, Plaintiffs have met their burden for conditional certification. However, as requested by the Defendants, the Court limits Plaintiffs' Proposed Class to servers and bartenders employed by Wicked Tuna from its opening until October 5, 2014.[4]

Therefore, the Court conditionally certifies Plaintiffs' Proposed Class with the modifications requested by Defendants. The class is hereby defined as follows:

> All Wicked Tuna servers and bartenders who, from Wicked Tuna's opening until October 5, 2014, were paid an hourly rate less than the statutory minimum wage of Seven and 25/100 dollars ($7.25) per hour and either contributed money to a tip pool or received money from a tip pool.

### II. Contact Information for the Proposed Class

Plaintiffs also request an Order requiring Defendants to produce the names, addresses, telephone numbers, email addresses, and dates of employment for all Wicked Tuna employees belonging to the class. Defendants object to disclosing the telephone numbers and email

---

4. It is unclear whether the back-of-the-house employees who shared in the tip pool were paid the minimum wage. To have a private right of action under §216(b), the back-of-the-house employees must have been paid less than the minimum wage. *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citing *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1284 (4th Cir. 1996)). The only evidence submitted about back-of-the-house employees' wages was Defendant Sandeep Patel's affidavit, in which he states that at no point were back-of-the-house employees paid less than minimum wage. Hyde's affidavit contains a conclusory statement that other support staff members were paid less than minimum wage. However, unlike his claims about servers and bartenders, Hyde's claim about back-of-the-house employees is not supported by any additional evidence. Therefore, Hyde's statement is insufficient evidence to warrant the inclusion of back-of-the-house employees in the class. Patel also states that Wicked Tuna ended the tip pool and breakage fees on October 5, 2014. Plaintiffs do not contradict this statement. In light of Defendant Patel's affidavit, the Court finds that Defendants' request to limit Plaintiffs' Proposed Class is warranted.

addresses of their current and former employees, arguing that "Plaintiffs have provided no rationale for the necessity of using email and text message notice." (Defs.' Mem. Opp'n Pls.' Mot. for Conditional Certification, ECF No. 34, at 17.) Additionally, Defendants assert that electronic communications are not as formal as U.S. Mail and have a higher propensity for abuse. To illustrate the propensity for abuse, Defendants assert that Plaintiffs' counsel solicited potential opt-in plaintiffs before conditional class certification. Defendants cite to *Bouder v. Prudential Financial, Inc.* to support their argument against sending notice by email. No. 06-CV-4539 (DMC), 2007 WL 3396303 (D.N.J. Nov. 8, 2007). However, the procedural posture and the facts in *Bouder* render it inapplicable to this case. In *Bouder*, plaintiffs' counsel was ordered to cease and desist when he attempted to send a notice letter to non-client potential class members before moving for conditional certification. *Id.* at *1–3. Here, Plaintiffs' counsel sent an email to his clients that inadvertently included a non-client. His email was not a solicitation, and Plaintiffs' counsel subsequently moved for conditional certification. Consequently, Defendants' citation to *Bouder* is inapposite.

District courts have taken a variety of positions and approaches as to what information regarding potential plaintiffs may or shall be disclosed to named plaintiffs at the notice stage of FLSA actions.[5] Courts in this circuit require a showing of a "special need" before requiring the disclosure of telephone numbers. *See Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *3 n.1 (D. Md. May 5, 2014) ("Defendants will not . . . be required to provide

---

5. *Compare Velasquez v. Digital Page, Inc.*, No. 11-3892 LDW AKT, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."), *with Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("Courts in this district hold that absent a showing by plaintiffs of a 'special need' for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.").

9

phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information.").

Plaintiffs assert that they have shown a special need because the Wicked Tuna "has many seasonal employees." (Pls.' Mem. Supp. Mot. for Conditional Certification, ECF No. 19-1, at 9.) As a result, Plaintiffs argue for email notice in addition to U.S. Mail notice because "email addresses tend to last for a long time" and "email notice has been found by courts to be a safe, reliable, and very unobtrusive method of delivering notice." *Id.* As for telephone numbers, Plaintiffs desire to use a text message form of notice if a class member's U.S. Mail notice is returned as undeliverable. Plaintiffs claim that "[t]he one constant contact that *these putative members* have is their cell phone number." *Id.* at 10. Defendants do not contradict Plaintiffs' assertion that Wicked Tuna employees are seasonal and instead state, "Plaintiffs have provided no rationale for the necessity of using email and text message notice." (Defs.' Mem. Opp'n Pls.' Mot. for Conditional Class Certification, ECF No. 34, at 17.) In light of Plaintiffs' uncontroverted allegations, the Court finds that Plaintiffs have demonstrated a special need for the use of email notice and approves notice by both U.S. Mail and email. Additionally, the Court grants Plaintiffs' request to send notice by text message, but only in the limited circumstance where both the U.S. Mail and email notices are returned as undeliverable.[6] Accordingly, Plaintiffs' request that the Court order Defendants to produce the email addresses of potential plaintiffs is granted, while Plaintiffs' request for text message notice is only granted in the limited circumstance described above. Defendants are hereby ordered to produce the names, addresses, email addresses, and dates of employment of all potential plaintiffs, in the manner requested by Plaintiffs, within ten days of this Order. If both the U.S. Mail notice and the email

---

6. *See Houston v. URS Corp.*, 591 F. Supp. 2d. 827, 836 n. 9 (E.D. Va. 2008) (approving the disclosure of phone numbers where U.S. Mail notices were returned as undeliverable).

notice to a potential plaintiff are returned as undeliverable, Plaintiffs may request the mobile phone number of that potential plaintiff from Defendants. Any production of employee information shall be made directly to the third-party administrator and shall not be sent to Plaintiffs' counsel.

### III.     Form and Manner of Court-Facilitated Notice

Having concluded that conditional certification of this action pursuant to § 216(b) is appropriate under the circumstances, the Court turns now to Plaintiffs' various requests regarding the Court-facilitated notice to potential opt-in plaintiffs, as well as the Defendants' objections to the form and manner of such notice.

### A.     *Proposed Initial Notice*

Contemporaneously with their filing of the instant Motion, Plaintiffs have provided the Court with a proposed notice, titled "Notice of Collective (Class) Action Lawsuit" ("Proposed Notice"). Plaintiffs seek the Court's approval of the Proposed Notice and the Court's authorization to send it to prospective plaintiffs. Defendants, in addition to requesting modification of the Proposed Notice to account for the various objections outlined above, also ask that the language of the Proposed Notice be amended in several other respects. The Court will address all of Defendants' objections to Plaintiffs' Proposed Notice in turn.

Again, it is important to note that "district courts have discretion, in appropriate cases, to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc.*, 493 U.S. at 169. In facilitating such notice under the FLSA, courts also have "broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)). "Neither the statute, nor other courts, have

11

specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 60 (E.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (internal quotation marks omitted)). Moreover, the Supreme Court has expressly abstained from reviewing the contents of a proposed notice under § 216(b), instead "confirm[ing] the existence of the trial court's discretion, not the details of its exercise." *Hoffman–La Roche, Inc.*, 493 U.S. at 170. Nevertheless, "[w]hen exercising its broad discretion to craft appropriate notices in individual cases, District Courts [should] consider the overarching policies of [the FLSA's] collective suit provisions." *Velasquez*, 2014 WL 2048425, at *9 (quoting *Fasanelli*, 516 F. Supp. 2d at 323 (internal quotation marks omitted)). "The[se] overarching policies . . . require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Butler*, 876 F. Supp. 2d at 574–75 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)). "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013) (quoting *Kelly v. Bank of Am., N.A.*, No. 10 C 5332, 2011 WL 7718421, at *1 (N.D. Ill. Sept. 23, 2011) (internal quotation marks omitted)).

Defendants' objections are addressed under the headings they used in their Memorandum in Opposition to Plaintiffs' Motion for Conditional Class Certification.

1. The Proposed Notice Should Be Limited To U.S. Mail Only

Defendants' request to limit notice to U.S. Mail is denied for the reasons discussed in Section II above.

2. <u>The Proposed Notice Should State That The Client Is Responsible For Costs And Contain An Explanation Of Plaintiffs' Attorney's Fees</u>

Defendants assert that an explanation of Plaintiffs' attorney's fees should be included in the Proposed Notice and the Consent to Join Lawsuit form ("Consent Form"). Specifically, Defendants wish to attach a copy of Plaintiffs' counsel's fee schedule to the Proposed Notice and to the Consent Form, and to edit sections six and seven of Plaintiffs' Proposed Notice. Defendants wish to add the word *upfront* to section six and to change the first sentence of section seven. Plaintiffs' sentence reads, "Plaintiffs' attorneys are being paid on a contingency fee basis, which means that if there is a recovery, Plaintiffs' attorneys will receive a part of any settlement obtained or money judgment entered in favor of all members of the class." (Pls.' Mot. for Conditional Certification Exh. 13, ECF No. 18-13, at 3.) Defendants propose the following italicized changes, "Plaintiffs' attorneys are being paid on a contingency fee basis, which means that if there is a recovery, Plaintiffs' attorney's *fees and costs incurred in this action will be deducted from* any settlement obtained or money judgment entered in favor of all members of the class." (Defs.' Mem. Opp'n Pls.' Mot. for Conditional Class Certification Exh. 6, ECF No. 34-6, at 7.) The Court finds that the language in Plaintiffs' Proposed Notice is sufficient to inform potential plaintiffs that Plaintiffs' counsel will be paid on a contingency fee basis. Therefore, Defendants' objections are overruled.

3. <u>The Proposed Notice Should Reflect All Changes Made In Plaintiffs' Amended Complaint</u>

Defendants also request that the portions of the Proposed Notice that do not reflect the changes in the Amended Complaint be deleted or reworded. In particular, Defendants point out the addition of Plaintiff Jacob Hyde as a party and the removal of damage claims seeking the

return of tips and breakage fees. Plaintiffs agree to update the caption to reflect the addition of Jacob Hyde as a party, but assert that they continue to seek recovery of the tips and breakage fees that were allegedly deducted by Wicked Tuna. Thus, the Court declines to remove references to those claims from Plaintiffs' Proposed Notice. Defendants' objection is overruled.

### 4. Plaintiffs Should Be Responsible For Paying The Cost Of Administration, Not Defendants

Next, Defendants request that a third-party administrator send out the Proposed Notice. Additionally, Defendants request that Plaintiffs be required to pay the third party administrator's costs for sending out notices to class members. Plaintiffs object, stating that Plaintiffs' counsel would administer the notice if Defendants do not wish to pay for the costs of a third-party administrator. Although Plaintiffs' counsel seeks the option to administer the notice himself, the privacy of potential class members weighs in favor of requiring a third-party administrator. *See Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *5 (D. Md. Nov. 18, 2009). "[T]he Plaintiffs may seek reimbursement should they prevail in this suit." *Id.* Therefore, the Court orders that the parties meet and confer to agree on a third-party administrator. The costs of the third-party administrator are to be paid by Plaintiffs.

### 5. The Opt-In Period Should Be Thirty (30) Days

Defendants also request that the opt-in period should be limited to thirty days rather than forty-five days. Plaintiffs have agreed to a thirty-day opt-in period in their Reply.

### 6. Sections Of The Proposed Notice Which Defendants Have Denied Should Be Deleted Or Changed

The Proposed Notice contains allegations from the Amended Complaint that Defendants have denied in their Answer. Defendants request that the Proposed Notice's language be either

14

deleted or changed to reflect Defendants' denial. Specifically, Defendants object to the last full paragraph on the first page of the Proposed Notice and the fourth paragraph on the second page of the Proposed Notice.[7] Plaintiffs agree to change the last full paragraph on the first page to include a denial by the Defendants. Accordingly, the Court includes Defendants' language stating, "Wicked Tuna has denied they violated the FLSA. The Court has not taken any position in this lawsuit regarding the merits of Plaintiffs' claims or Wicked Tuna's defenses." However, the Court declines to change Plaintiffs' fourth paragraph on the second page. As discussed above, Plaintiffs continue to seek the damages mentioned in that paragraph. Thus, the Defendants' objection is sustained in part and overruled in part.

7. <u>The Proposed Notice Should State That It Is Being Sent By A Third Party Administrator</u>

Finally, Defendants request that the notice contain a clause notifying potential class members that the notice is being sent by a third-party administrator. The Court finds Defendants' request reasonable. Therefore, Defendants' proposed clause is approved.

The Court hereby authorizes Plaintiff's Proposed Notice, subject only to the modifications discussed above, including the revised definition of the class. The remainder of Plaintiffs' Proposed Notice remains unchanged.

### B.     *Posting of the Authorized Notice*

Finally, Plaintiffs seek an Order from this Court requiring Wicked Tuna to post the Proposed Notice in a communal area within its restaurant. Plaintiffs cite authority stating that such notice is routinely granted. Since Defendants do not address this manner of notice in their Memorandum in Opposition, the Court grants Plaintiffs' request.

---

7. These references, along with all subsequent references in this Section 6, are to pages 1-2 of Exhibit 6 to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Conditional Class Certification.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Conditionally Certify a class is **GRANTED IN PART AND DENIED IN PART**, subject to the modifications and limitations outlined above.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**October 8, 2015**
**Charleston, South Carolina**

16